Yvonne C. BURNS, Individually and as parent and natural guardian of Kevin Burns and Renee Burns; Steven Burns, an individual; and Bryan Burns, an individual, Plaintiffs-Appellees,

v.

The DENVER POST, INC., a Colorado corporation, Defendant,

McGraw Hill Broadcasting Company, Inc., a New York corporation, Defendant-Appellant.

No. 78–1052.

Colorado Court of Appeals, Div. II.

Dec. 31, 1980.

Rehearing Denied March 5, 1981.

Certiorari Granted June 29, 1981.

David L. Kofoed, Roger T. Castle, Denver, for plaintiffs-appellees.

Dawson, Nagel, Sherman & Howard, Lee Dale, Denver, for defendant-appellant.

BERMAN, Judge.

In this libel action, McGraw Hill Broadcasting Company, Inc., (McGraw Hill) appeals from a judgment entered upon jury verdicts in favor of plaintiffs. We reverse.

This case involves many of the same legal and factual considerations this Court recently addressed in *Burns v. Denver Post, Inc.*, Colo.App., 606 P.2d 1310 (1979). The chief difference, aside from the party defendant and additional parties plaintiff, lies in the words alleged to be defamatory.

Plaintiffs are the children and ex-wife of a former Denver police sergeant who in 1972 sustained injuries when a bomb he was attempting to disarm exploded. Sergeant and Mrs. Burns had had marital difficulties prior to the accident, and Mrs. Burns had filed for divorce a few months before Sergeant Burns' injuries. Those injuries included partial blindness, the loss of major parts of both hands, and severely diminished hearing. Mrs. Burns was granted a divorce in 1974.

On April 7, 1976, nearly four years after the accident, McGraw Hill, through a news program broadcast on television Channel 7,

published a statement which contained language plaintiffs allege to be defamatory. In material part, that publication was as follows:

"[B]omb squad was called out to do its job, take care of an explosive device and keep it from harming any property or individuals. It seemed to be a routine bomb call; the explosive device was found wired to a car. But the bomb squad's experts were confident they could handle it. As the officers went to work, Sgt. Jack Burns was in charge. That was the last bomb he'll ever work on. It exploded . . . taking all of his right hand, parts of his left hand, most of his eyesight and much of his hearing. *In addition, his wife and five children have deserted him since the accident.* He's not sure he and his family adequately assessed what might be the consequences of an accident on the job with the bomb squad and he advises those interested in a dangerous occupation to do so." (emphasis added)

Mrs. Burns received obscene telephone calls, severe criticism, and a purported loss of business income, all allegedly as a result of the broadcast's use of the word "deserted." In addition, the Burns' children asserted variously that they were subjected to ridicule by their school teachers and classmates, and suffered great embarrassment and emotional distress also in consequence of the broadcast.

■ On appeal, it is urged that the trial court erred in denying McGraw Hill's motion for a directed verdict. McGraw Hill, relying *inter alia* on *Bucher v. Roberts*, 198 Colo. 1, 595 P.2d 239 (1979), and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), insists that its use of the word "deserted" *in this context* is, by virtue of the First Amendment, protected as an expression of opinion. We agree.

In *Burns, supra,* this Court (quoting *Bucher*) stated:

"Once a court needs to speculate concerning the meaning the statement purports to convey . . . we enter the area of opinion as opposed to factual assertion."

As we read *Burns* and *Bucher,* we may not inquire into what meaning is most *naturally or reasonably* attributable to a publisher's use of given language. The question, rather, is whether the words used are used in such circumstances and are of such a nature as to admit of only one meaning. Here, we cannot say categorically that the word "deserted," as used in the context of the broadcast at issue, carries solely opprobrious connotations.

Therefore, we conclude that use of the word "deserted" in this context constituted protected expression of opinion. As a result, we are bound by *Burns* and *Bucher* to hold that the trial court erred in denying McGraw Hill's motion for directed verdict.

The judgment is reversed.

SMITH, J., concurs.

RULAND, J., dissents.

RULAND, Judge, dissenting.

I respectfully dissent.

Initially, I disagree with the majority's characterization of the word "deserted" as the expression of an opinion. I have no quarrel with the statement in *Bucher* that "[o]nce a court needs to *speculate* concerning the meaning" (emphasis added) of a purportedly defamatory statement, then the statement is an opinion rather than a factual assertion. However, here, to invest the term "deserted" with connotations of approbation is not a speculative venture. Whether considered in its every-day sense or as a legal concept, the term invariably implies an unjustified forsaking of a solemn obligation. And this obvious implication of the term was made even more apparent by its juxtaposition to the report of Sergeant Burns' tragic injuries.

An essential inquiry in any libel suit is whether a particular statement could *reasonably* have been understood to be defamatory. *See Bucher v. Roberts,* 198 Colo. 1, 595 P.2d 239 (1979); Restatement (Second) of Torts § 559, Comment e (1977). Here, the statement is reasonably interpreted as attributing to Ms. Burns an act of "the basest ingratitude . . . deserving the con-

tempt of all right minded people." *Smith v. Smith*, 73 Mich. 445, 41 N.W. 499 (1889). Hence, I would characterize defendant's news report as a factual statement of a past event and thus actionable as being defamatory.

Furthermore, I cannot accept the majority's stringent test for distinguishing fact from opinion. Few, if any, words carry such a precise meaning as to be understandable in only one way. Thus, in practical effect, the majority's test will place virtually any statement within the protected bounds of being opinion, rather than fact.

Nor do I view *Burns v. Denver Post, Inc.,* Colo.App., 606 P.2d 1310 (1979) as dispositive here. First, the publication at issue in that case did not state that Sergeant Burns' wife and children had "deserted" him. Rather, the article only said that Ms. Burns had divorced him because she "couldn't live with a blind man." Secondly, while a petition for writ of certiorari was denied in that case, such denial does not necessarily constitute approval of the Court of Appeals opinion. *See* C.A.R. 35(f) (1979 Cum.Supp.). Thus, in my view, this court should address the appellant's other contentions for reversal.